FUGATE, &c.
vs.
ROBINSON.

---

Case 33.

PET. EQ

## Fugate, &c., vs. Robinson.

### APPEAL FROM PENDLETON CIRCUIT.

When parties owning lands adjoining have a controversy about their lines, and make a compromise and agree in writing upon a line, the chancellor will, when there has been no unfairness, fraud, or mistake, compel a specific performance of the agreement. (Story's Eq. sec. 729.)

[The facts are set out in the opinion of the court. REP.]

*John E. Records*, for appellant—

The object of the plaintiffs' petition was to obtain a specific execution of the contract by which the parties had agreed on a division line between land. Is not this the appropriate remedy? What is the object of applying to a court of equity for the specific execution of a contract? It is that the rights of all the parties may be fully adjusted and settled, according to their contract and the principles of equity. This is too well settled to require the cita-

tion of authority; I will however refer to one author on the subject: *Holcomb, on his introduction to equity jurisprudence, page* 12, holds this language: "courts of 'equity have jurisdiction in cases of rights recog- 'nized and protected by the municipal jurispru- 'dence, where a plain, adequate, and complete rem- 'edy cannot be had in the courts of common law. 'If the remedy at law is doubtful, obscure, or if it 'falls short of what the party is entitled to, or if it 'does not reach the whole mischief, and secure the 'whole right of the party in a perfect manner, both 'at the present and in future time, a court of equity 'will interpose and grant such relief as the circum- 'stances of the case may require."

This is a clear statement of the jurisdiction of courts of equity. The same author, at *page* 124, when speaking of specific performance, says: "the 'specific performance of agreements and other du- 'ties is a very ancient and most important branch of 'equitable jurisdiction. It is a remedial function, 'which courts of law are incapable of exercising, 'but which, from the insufficiency of damages in 'many cases for a breach of contract, is indispensable 'for the purposes of justice."

In this case there was a contract by Fugate and wife of the one part, and Jacob Robinson of the other part; a controversy had subsisted, and it is set- tled in a specific manner; in order to carry it into full effect something farther is to be done. This which is to be done is fully settled by the agreement. Fugate and wife have nothing to do unless Robin- son will act with them in carrying out the agree- ment; they offer to do their part; Robinson refuses to perform his part. The law affords the remedy; not by an action at law, which has no power to decree con- veyances and compel performance; it is the peculiar province of the chancellor to do this, and the com- plainant is entitled to a conveyance that he may perpetuate the evidence of his right to his land by the agreed boundary. The stipulations of the agree-

FUGATE, &c., *vs.* ROBINSON.

ment contain mutual obligations, and required con-cert of action. Fugate and wife offered to carry it into effect; Robinson refused. All that Fugate could do to get their contract was to apply to a court of equity.

The court of chancery will find no difficulty in ascertaining the line agreed on, through a competent surveyor, and compelling the parties mutually to pass deeds for the land according to the agreement, and place the parties in possession according to their rights.

If any error was committed in the original petition it was amendable. (*Civil Code, sec. 7, page* 3.) *Sec.* 161 provides very fully for the filing of amendments in furtherance of justice—striking out or inserting averments, as the case may require. (See 15 *B. Monroe,* 171.) The court rejected the amendment offered.

The judgment of the court was wrong on the demurrer, and then in dismissing the plaintiffs' petition.

*W. C. Marshall & Trimble,* for appellee—

1. The court of chancery had not the power to grant the relief claimed by Fugate and wife, or to quiet title.

2. The plaintiffs were not in possession of the lands, which was necessary to give the chancellor the power to quiet the title.

3. If Robinson made such a contract as is set out, and failed or refused to comply with it, Fugate and wife had two remedies at law—to sue for breach of the contract, and have compensation in damages for its violation, or sue for the land and recover it, as they aver that they had been in adverse possession for upwards of twenty years, before Robinson moved his fence upon their possession.

4. The land is alleged to belong to Fugate's wife. Could they, in the form and manner adopted in this cause, dispose of the lands of the wife? It is supposed not.

5. The amendment offered was, in substance, to recover the possession of the' land which, united with the petition for specific performance, would have presented the strange anomily of a union of a suit at law and in equity.

FUGATE, &c.,
vs.
ROBINSON.

Chief Justice WHEAT delivered the opinion of the court.

Jan. 19, 1858.

Fugate and wife brought their petition in equity against Robinson, for the specific execution of a written contract, signed by all the parties, in which they had agreed upon the location of a corner, on the South Fork of Licking river, and the manner in which the division line between their lands, which adjoined, should be run from that corner.

Robinson demurred to the petition, and the court below sustained the demurrer, and gave Fugate and wife leave to amend. They offered an amendment, which was a paragraph in ordinary proceedings, for the recovery of the land lying between the once disputed lines; to the filing of the amended petition Robinson objected, and the objection was sustained, and Fugate and wife failing further to amend, their petition was dismissed by the court, at their cost. They asked and obtained leave to have the amendment offered by them made part of the record, which was done by an order of the court, and they have appealed to this court.

The petition sets forth a good cause of action, and exhibited, as part thereof, a diagram showing the relative position of the lands of both parties, where each party had contended the dividing line between their lands run, and where the corner and line agreed upon by them, in the written agreement of compromise, were situated. The petition also averred that Robinson refused to abide by and perform the agreement, and threw every obstacle he could in the way of fixing the line according to the contract.

The agreement exhibited was one intended to make peace between the parties, and such an one as the chancellor ought to delight in specifically carrying into execution.

FUGATE, &c.,
vs.
ROBINSON.

When parties
owning land ad-
joining have a
controvery a-
bout their lines,
and make a
compromise and
agree in writing
upon a line, the
chancellor will,
when there has
been no unfair-
ness, fraud, or
mistake, compel
a specific perfor-
mance of the
agreement. (Sto.
Equity, sc. 729.)

When the parties have, upon a compromise, agreed upon a boundary between their lands, and reduced the agreement to writing, and no unfairness, fraud, or mistake is complained of, in procuring the agreement, and one of the contracting parties refuses to abide by or perform the agreement, the court ought to compel him to perform it specifically. It is in vain to say to the complaining party, in such case, he might bring his action at law. The remedy at law is not so effectual or complete as the proceeding in equity; for this reason the court should entertain the complaint of the party not in fault.

It is laid down in *Story's Equity Jurisprudence*, *section* 729, that an agreement to settle the boundaries between two estates will be specifically enforced. The case presented in the petition shows that complete relief at law could not be obtained; no deed could be procured at law, which the party might cause to be enrolled, and thereby have a durable memorial of his right to the land, which is his by the agreement exhibited in the petition. The court below could, through a commissioner, have ascertained precisely where the agreed corner on the bank of the South Fork of Licking river stood, and had the line run from there to the beeches, and so on, according to the agreement exhibited, and proper monuments placed to define and perpetuate the evidence of the rights of the parties. After this should have been done Fugate and wife might have been required to present in court their deed, properly acknowledged and authenticated, conveying and relinquishing all claim on the side of the agreed line, which, by the ageement, was Robinson's, and then Robinson could have been required to convey to Mrs. Fugate all on her side of the agreed line.

We deem it unnecessary to notice the proceedings of the court any further than they relate to the original petition, as the action of the court upon that is

not according to the principles and usages of courts of equity.

The court below erred in sustaining the demurrer to appellant's petition, and for this cause the judgment of said court is reversed, and the cause remanded for further proceedings not inconsistent with the principles of this opinion.